CORBIN *vs.* JACKSON ex dem. GARNSEY and others.

A party claiming lands by *deed* executed under an alleged *power of attorney* from the owner of the fee to the person executing the deed, thereby authorizing him to sell and convey the lands, may, *in proof of the power,* give in evidence the *declarations* of the owner of the land, the constituent of the power, made previous to the accruing of the interest of a defendant in ejectment who claims under such owner—that such *power of attorney* once existed, that its contents were as alleged in the deed, and that it had been subsequently cancelled, lost or destroyed; and this under the rule of evidence that what may be proved by the *parol testimony* of third persons, may in like manner be shown by the *declarations* of the constituent to the power. *So held* by the CHANCELLOR and 16 other members of this *court,* in affirmance of the judgment of the supreme court—*Senators* EDWARDS and TRACY and three other members of the court *dissenting.**

And in such case the party alleging the existence of the power is not bound to call the constituent to the power to *testify as a witness,* but may rely upon his declarations.

Where a deed granted 600 acres of land, *to be surveyed or taken off* of a large tract, and by the terms of an instrument referred to in the deed, the tract

---

* See *opinions* delivered by *Senators* EDWARDS and TRACY.

was to be divided into lots of 100 acres each, and an *election* of lots was given to the grantees, which they subsequently made ; *it was held*, that though by the terms of the deed the premises granted were undefined and uncertain, still that the subsequent *location*, in pursuance of the *right of election* given by the deed, rendered that certain and definite which before was uncertain, and vested a legal title in the specific premises elected to be taken ; and that a *parol partition* between the grantees, followed up by actual possession, was valid and binding.

ERROR from the supreme court. Garnsey and the other lessors of the plaintiff brought an action of ejectment against Corbin to recover a lot of land, part of a large tract of 15,-360 acres, granted by letters patent in 1787 to M. Treat and W. Morris, and produced in evidence a deed covering the premises in question, bearing date 12th September, 1792, purporting to have been executed to *Marie Jeane D'Autremont* and others, by *Charles Felix Bue De Bouloigne*, as the attorney in fact of Treat and Morris, the patentees, by virtue of a *power of attorney* alleged to have been executed by Treat and Morris on the 16th June, 1791, authorizing the sale and conveyance of the whole tract of 15,360 acres. The deed was duly *acknowledged* by the attorney, and *recorded* in the proper office. Attached to it was a *French copy* of what purported to be the *power of attorney* recited in the deed, and purported to have been executed in the city of New-York, in the presence of two witnesses, and to have been acknowledged before a notary public. There was also attached to the deed a *French copy* of what purported to have been the articles of agreement between *Bouloigne* and the grantees named in the deed for the premises conveyed thereby, and which purported to have been executed at *Paris*, in France, in March preceding the date of the deed, and wherein it was stated that the *power of attorney* from Treat and Morris to Bouloigne had been authenticated and deposited, with its translation in the French language, with a *notary* in Paris of the name of *Gabion*. The original power not being produced, the lessors of the plaintiff offered to prove its existence and contents, and loss or destruction, by the *declarations of Morris, one of the patentees*. The defendant insisted that such declarations were inadmissible as evidence, but the objection was overruled. It was thereupon proved, that in 1801 Morris admitted the existence

of the power of attorney, and that Bouloigne was thereby authorized to sell and convey the whole of the tract. He at the same time stated that the power of attorney had been cancelled, or given up, or destroyed. These admissions were made to an agent of the heirs of Treat, his co-patentee, upon whom he enjoined to conceal the fact that such a power had ever existed. The persons whose names appeared as *witnesses* to the execution of the power, upon the copy produced, were dead at the time of the trial, and *Bouloigne* the attorney, and *Treat* one of the patentees, were also dead; but Morris, the other patentee, was living. Madame D'Autremont went into the actual possession of the premises in question, and the lessors of the plaintiff deduced title from her to themselves, and rested. The judge refusing to nonsuit the plaintiff, the defendant went into evidence on his part, and proved a *partition* of the tract of 15,360 acres between Morris and the heirs of Treat, his co-patentee, made in 1800, whereby the premises in question were allotted and released to Morris; and that subsequently, in 1819, the premises were sold at a sheriff's sale, by virtue of an execution issued on a judgment rendered against Morris, and that the defendant was in possession under title derived from such sale.

Besides objecting to the competency of the evidence adduced to prove the existence of the power of attorney, the defendant also insisted that the deed to Madame D'Autremont was invalid for the *uncertainty of the description* of the premises conveyed ; which objection was also overruled. For the facts in reference to the latter objection, see the case of *Jackson* v. *Livingston*, 7 *Wendell*, 136, the facts in which, in this particular and in the general features of the case, are almost identical with those in this case. The jury, under the charge of the circuit judge, found a verdict for the plaintiff. The defendant, on a bill of exceptions, applied to the supreme court for a new trial, which was denied for the reasons assigned in refusing a similar application in *Jackson* v. *Livingston*, above referred to, and judgment was accordingly rendered for the plaintiff. The defendant sued out a writ of error. The cause was argued here by

*B. F. Butler,* (attorney general of the U. S.) for the plaintiff in error.

*J. A. Spencer,* for the defendant in error.

The following opinions were delivered:

By the CHANCELLOR. The right of the lessors of the plaintiff in the court below to recover the premises in question in this cause, the south half of lot No. 80, in Treat and Morris' patent, depends upon the validity of the deed of September, 1792, to Le Fevre and wife and Madame D'Autremont. This deed is for 600 acres of land, and purports to be executed by Treat and Morris, under whom both parties claim title, by Charles Felix Bue De Bouloigne, their attorney. It was duly acknowledged and recorded as early as 1796. It recites the granting of a patent to Treat and Morris, in 1787, for 15,360 acres of land in Green Township; the execution of a power of attorney from them to Charles Felix Bue De Bouloigne, in 1791, authorizing him to sell and convey the lands; the execution of a contract of sale by him, as such attorney, to Le Fevre and wife and Madame D'Autremont, for 600 acres, which contract was annexed to the deed, and conveys to the grantees in fee the 600 acres, parcel of the 15,360 acres, to be surveyed and taken according to, and in pursuance of such contract of sale.

The first objection to the validity of this deed, urged by the counsel for the plaintiff in error, is, that there was no legal evidence on the trial of the existence and due execution of the power of attorney recited in the deed. To establish the fact that such power had been executed by Treat and Morris, the lessors of the plaintiff gave in evidence the declarations of Morris, under whom the defendant subsequently derived his claim of title. These declarations or admisions were made about the year 1801, while Morris himself was the sole owner of the premises in controversy, if the power had not been executed so as to vest the title in Madame A'Autremont, under the deed. It was also proved that both of the subscribing witnesses mentioned in the agreement annexed to the deed as

having attested the execution of the power were deed. These admissions of Morris, if they were legal evidence against the defendant, established the fact of the execution of the power, and that it was given up and cancelled or destroyed, when Treat and Morris executed a conveyance to Bouloigne, about the year 1795. And if the power is proved, or is presumed to be destroyed or lost, or if it was placed beyond the power or control of the lessors of the plaintiff, I agree with the chief justice, who delivered the opinion of the supreme court, that these declarations or admissions of Morris are good secondary evidence of its original existence and contents; not only against Morris himself, but also against others, who have derived their claim of title under him since such declarations and admissions were made, whilst Morris was claiming to be the owner of the land. In 1801, it is perfectly clear that the grantees of Madame D'Autremont might have filed a bill of discovery against him, for the purpose of obtaining a compulsory admission of the fact that such a power had been executed, and that it had been surrendered up or destroyed subsequent to the execution of the deed; and his answer thus obtained would have been legal evidence against him and those subsequently claiming under him, to estalish these facts in any future litigation. *Lady Dartmouth* v. *Roberts*, 2 *Eagle & Young*, 655. And if the same discovery or admission was then made by him voluntarily, it must have the same legal effect, both as to him and as to those who are his privies in estate, either by descent or conveyance. It makes no difference in this case that Morris was himself alive, and might have been examined as a witness. That question has been recently examined and decided by the supreme of court of Pennsylvania, in the case of *Gibblehouse* v. *Strong*, 3 *Rawle's R.* 437, where all the authorities on the subject were most elaborately examined; and it would be impossible for me to add any thing to the powerful and conclusive reasoning of Mr. Justice Kennedy on the point now under consideration. Suffice it to say, that the decision of Chief Justice Savage on this quesion is fully sustained. This is not one of those cases where it is attempted to introduce parol evidence of the declaration of a party to destroy a written title to land, contrary to the provis-

ions of the statute of frauds; but it is merely showing, by the admissions of the party in whom the title would otherwise have been vested, at the time of such admissions, that his title had previously been divested under a valid power executed in due form, according to the requirements of that statute, but which power has been subsequently lost or destroyed, or is placed beyond the reach of our courts of justice. The declarations of Morris would not have been conclusive evidence, even against himself; and therefore it was in the power of the defendant to have called him for the purpose of showing that no power of attorney had in fact been executed by himself and Treat, if such was in fact the case. But when we find him admitting that such a power had been given, in his private conferences with the agent of Treat's heirs, and at the same time urging the concealment of the fact for the purpose of defrauding of their title those who had purchased and paid for their land under that power, it would be going too far to say the lessors of the plaintiff should be compelled to call him as a witness, and trust to his honesty on oath; thereby precluding themselves from the possibility of discrediting him, or of impeaching his testimony.

But it is said there was sufficient to raise a presumption that the power itself was in existence, at Gabion's, in Paris, where the contract of purchase was executed in 1792. The agreement annexed to the deed contained the copy of a French translation of the power said to have been deposited with the original at Gabion's, the year previous; and there can be very little doubt that the power translated by L'Abbe De Francois, in October, 1791, was the same which was referred to in the admissions of Morris, as having been executed by himself and Treat, as he probably was aware of the existence of the French copy annexed to the deed, which was then on record. But although it was in the hands of Gabion forty years before the trial, the fair presumption would be that it was taken again by Bouloigne, when he returned to this country; as it embraced the whole of the lands of Treat and Morris in the patent, as well as the 600 acres sold to Le Fevre and D'Autremont. That supposition also corresponds with the declarations of Morris, as to its being given up and cancelled or de-

stroyed. No evidence has been given to show that by the
laws of France an instrument once deposited with a notary
must remain in his office as a record; but even if that was
admitted, it would only prove that no better evidence than
Morris' admissions of the execution of the power could be ob-
tained, as no witnesses who were acquainted with the hand-
writing of Hughes and Thompson, the witnesses to the pow-
er, or of Treat and Morris, forty years since, could be found
in France to prove the execution of the power under a com-
mission, and the court had no power to send witnesses there
to be examined, to prove its execution. Besides, the con-
tents of the paper deposited there were already in evidence
in the official copy annexed to the deed.

The title to the undivided 600 acres passed immediately to
the grantees under the deed, with the right to elect in which
part of the tract it should be located, as soon as the patent
was allotted. The testimony shows that the grantees exer-
cised the right of election, and took possession of their six
one hundred acre lots, as early as 1793. This location, in
conformity with the provisions of the deed itself, rendered
that certain and definite which was before uncertain, and
gave to Madame D'Autremont a good legal title to lot No.
80, and the two other lots selected as her share of the pur-
chase. The *parol partition* between her and Le Fevre was
also valid. The judgment of the supreme court was there-
fore correct, and should be affirmed.

By Senator EDWARDS. The question is, was the deed of
12th September, 1792, a valid deed to pass the title to Ma-
dame D'Autremont and her co-grantees. It purported to be
executed by Bouloigne, by virtue of a power of attorney, and
to give it validity it was incumbent upon the plaintiff to pro-
duce the same proof of the execution of the power, that he
was bound to adduce in proof of the deed. A power requires
the same proof as a deed, to entitle it to be recorded. 1 *R. S.*
762, § 39. The power of attorney was not produced on the
trial, but its non-production was attempted to be accounted
for by proving the declarations of Morris, one of the grantors

VOL. XIV. 79

ALBANY,
Dec. 1835.

Corbin
v.
Jackson.

ALBANY,
Dec. 1835.

Corbin
v.
Jackson.

from whom the lessors of the plaintiff deduced their title ; and on these declarations they relied to show the existence, the contents and the destruction of the power of attorney. The first important inquiry, therefore, which appears to me to suggest itself for our consideration, is, whether the lessors of the plaintiff can avail themselves of these declarations in support of their claim of title. What objects are these declarations offered to accomplish ? Precisely the same the power of attorney would have accomplished, had that been produced and proved on the trial. They are to show that Bouloigne had authority from Treat and Morris to execute the deed of the 12th of September, 1792, in their names, to the lessors of the plaintiff. The declarations, therefore, are introduced for the purpose of making out the evidence of the title under which the lessors of the plaintiff claimed. What principles of law are relied on to justify the introduction of this testimony ? It is insisted that the declarations of Morris, one of the grantors, is binding on him and all claiming under him. It is true the acts and declarations of the grantor, before he parts with the possession and while he holds the title, may be given in evidence against him and all claiming title under him. *Jackson* v. *Bard*, 4 *Johns. R.* 233. *Jackson* v. v. *Davis*, 5 *Cowen's R.* 129. *Howlet* v. *Cook*, 7 *Wend.* 376. 4 *Cowen's R.* 587. 1 *Johns. R.* 343. 1 *Esp. N. P. Cas.* 453. 2 *T. R.* 53. But though this principle of law is conceded, yet there appears to be an insuperable difficulty in applying it in favor of the plaintiff. The declarations of Morris which are here sought to be made evidence, were made about 1801, from 8 to 10 years after the lessors of the plaintiff insist that Treat and Morris had parted with the title, which by the aid of these declarations they seek to establish. Again, the lessors of the plaintiff have made use of these declarations to establish the evidence of their own title ; whereas the rule of law is, such declarations may be given in evidence against such grantor and those claiming under him. The declarations of Morris while he was in possession, holding the title under which the defendant below claimed, might have been given in evidence in relation to his title, but the lessors of the plaintiff could not have offered it for that purpose, as it would have been wholly

immaterial; for had they shown by Morris' declarations that the defendants' title was defective, it would have availed nothing; they would not thereby have been entitled to recover in their ejectment suit, as they must rely upon the strength of their own title; and unless they prove a right in themselves to the possession of the premises, they are not entitled to succeed even against an intruder. The only point of view, therefore, in which Morris' declarations could become important to them, was to show their own title or right to the possession, and for this purpose it appears to me they were clearly inadmissible. There could be no objection to proving the contents of the power of attorney in question, had it been legally proved once to have existed, and had its non-production been sufficiently accounted for; but here lies the difficulty—to lay the foundation for secondary evidence, the rule is that the destruction or loss of the instrument must first be shown, or that diligent search and inquiry has been made of those persons in whose custody the law presumes it to be, after it is shown once to have existed. *Jackson* v. *Frier*, 16 *Johns. R.* 196. By the documents produced, if they are to be regarded as sufficient evidence in this cause that the power of attorney once existed, it appears it was deposited at Gabion's office, in Paris; and there is nothing in the case to show that it does not still remain there, except the confessions of Morris. One of the witnesses testifies that he is positive Morris declared that it was cancelled or given up; but it appears to me Morris is a competent witness to prove that the power of attorney was given up, cancelled or destroyed, and therefore his declarations or acknowledgments ought not to have been received in evidence, but he should have been produced as a witness, or his testimony should have been taken, or some other evidence should have been produced, to show that the power of attorney was destroyed, or that diligent search had been made at the place where the law presumed it to be, and that it could not be found. ·

It is supposed by the chief justice, who delivered the opinion of the supreme court in this cause, that Morris could not have been compelled to testify, had he been produced as a witness; but I see no reason why he could not. Had the les-

sors of the plaintiff produced him as a witness, and had the defendant objected to him on the ground of interest, as Bou-' loigne had given a warranty deed, that interest might have been released.  If it was his interest to uphold and support the defendants' title, and the testimony he was called upon to give would militate against that interest, still he was bound to give it if required.   A witness is objectionable when he is called upon to prove a fact in favor of his interest, but not when he is called upon to prove a fact against it ; nor can he in such case refuse to testify. *Jackson* v. *Vredenburgh*, 1 *Johns. R.* 162.   *Peake's Ev.* 112.   *In the matter of Kip*, 1 *Paige's Ch. R.* 612.   Besides, the statute expressly provides, that " any competent witness in a cause shall not be excused from answering a question relative to a matter in issue, on the ground merely that the answer to such question may establish or tend to establish that such witness owes a debt, or is otherwise subject to a civil suit." 2 *R. S.* 405.   But if the testimony of Morris was inadmissible had he been brought into court, or had his deposition been taken, proof of his declarations out of court must be equally so.   It appears to me, however, he might have been improved as a witness, and therefore proof of his declarations should not have been received.

It is unnecessary to consider the point urged by the respondents' counsel, that the objection to the testimony ought to have been interposed when the interrogatories were framed or the testimony taken.   The statute authorizes the objections to be made to the testimony on the trial of the cause, 2 *R. S.* 396, § 23.

I am of the opinion the power of attorney to Bouloigne was not legally sufficiently proved ; that the charge of the circuit judge was incorrect ; and that the judgment of the supreme court should be reversed.

By Senator Gansevoort.  From all the evidence in the case there can be no doubt that the power of attorney existed at the time Bouloigne executed the deed to D'Autremont and Le Fevre.  The question however is, Does the case before the court present competent *legal proof* to establish that fact ?  The evidence on this point is secondary ; it rests altogether on the pa-

rol proof of Hartshorne and Brush, derived from the admissions and declarations of the surviving patentee, Morris. Hartshorne swears distinctly, that in 1800 and 1801 Morris stated to him that Treat and he had executed to Bouloigne a power of attorney to sell and convey the whole patent; that Bouloigne under the said power had sold a few lots of land; that the power of attorney had been cancelled or given up by Bouloigne and destroyed, and also that the lessors of the plaintiff claimed six lots in the patent by virtue of a deed executed by Bouloigne by the authority of the said power. Morris also admitted to the witness, that a translation made in 1801, by Juliand at the request of Morris, of the power of attorney attached to the deed executed by Bouloigne to D'Autremont and Le Fevre, was in substance a correct copy of the original power of attorney. This evidence is supported by the testimony of Brush. It is a sound rule of law, that a fee cannot be divested by *parol*. Has this rule been violated by the decision in the court below? I am clearly of opinion that it has not. When it is shown that an instrument existed and that it has been cancelled or destroyed, it is competent to admit parol proof of its contents. In this there is no confliction with the statute of frauds; its requisitions have been complied with. The instrument was made in conformity with its provisions; the statute is satisfied. If the deed exist, it must be produced; this is the first and best evidence. If it has ceased to exist, has been cancelled or destroyed, it cannot be produced; then secondary evidence is admissible; and as it is competent to establish its existence and destruction by parol proof, such proof is the best evidence remaining to the party to show its contents. It in fact is the only proof left to the party, and in my opinion it is immaterial whether the contents of the destroyed instrument be established by one who had seen and read the instrument, or by proof of the declarations and admissions of the party by whom it was executed.

It is objected, that as the plaintiff below gave evidence that the power of attorney was deposited with and recorded by Gabion, the notary in Paris, in 1791, the legal presumption is that it is in that office, and the plaintiff ought to have shown due diligence to obtain it by a search in that office. I con-

sider this presumption rebutted and removed by the declarations and admissions of Morris, made after the return of Bouloigne from Paris, of the destruction of the power of attorney; and the party is therefore relieved from the necessity of showing a search for an instrument which is out of existence.

I also consider the defendant below estopped from taking the objection to the secondary evidence. The testimony of Hartshorne was taken without objection; his answers are directly responsive to the interrogatories which were formally settled and agreed to by both parties. In *Francis* v. *The Ocean Insurance Company*, 6 *Cowen*, 416, Sutherland, justice, in delivering the opinion of the court, says, "If no objection is made to the interrogatories, the information sought by them is admitted to be proper, and the answers must be considered as competent evidence, by the admission of the parties." This was the law applicable to this case, which arose before the revised statutes.

I am therefore of opinion that proof of the declarations and admissions of the surviving patentee Morris, made against his interest, and while he owned the title under which the defendant below claimed, is competent legal evidence; and that the supreme court was correct in refusing a *venire de novo*.

By Senator TRACY. There are several points in this case which have been laboriously argued by the counsel; but though I have examined them all, and the numerous authorities cited in their support, I did so with an impression obtained on the argument, that there was one single question on which the whole case turned. The result of my examinations and of subsequent reflection has confirmed the impression, and I shall therefore confine my observations to that question alone, being persuaded that if I am correct in the views which I shall endeavor to present of it, a discussion of the other points argued will be superfluous.

The question as it presents itself in this case is, can the execution of the alleged power of attorney under which the plaintiff derives his title to the premises from Morris and Treat be proved by evidence of the declarations of Morris? To put the proposition on its general and broad ground, can the ad-

mission of a party having title to land, that he had duly conveyed the land to another, be received as sufficient proof of the fact, so that it of itself shall establish the legal title in the other? That this is the true question here, and that it makes no difference that it happens to be a power of attorney and not a direct deed of conveyance which is to be thus established, will be seen by a moment's examination. The statute of frauds, in declaring that no estate or interest in lands, &c. shall be created, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party, &c. or by his lawful agent, adds an express requirement that such lawful agent shall be " thereunto authorized by writing." It follows then, that there is the same sort of necessity for establishing the original existence of the power of attorney to Bouloigne, as there would be of an absolute deed to him from Morris and Treat, in case the conveyance had been from him in his own right and not as attorney. This position of course is not controverted, and it is unnecessary to state it, except that I think the principle involved, of admitting the declarations of a party to supply a deed, will be presented in a simple form and be more easily illustrated by the case of an alleged absolute conveyance than by that of a power of attorney.

I proceed then with the inquiry, Can proof of the declaration by a person who has title to lands, that he has made a conveyance of it to another, establish the fact that he did make such conveyance, so as to relieve the party claiming, from the necessity of otherwise proving the fact? The argument in favor of such proof is, that any fact which legally can be proved by parol may be proved by the admissions of a party; that the original existence and contents of a lost deed can be proved by parol, and therefore its original existence and contents may be proved by the admissions of a party. This argument, assuming a form imposingly syllogistical, certainly is very specious, and to detect its fallacy, if it be fallacious, requires considerable astuteness; at least this must be presumed, since it has escaped the discernment of the supreme court, who have placed their judgment in favor of the plaintiff below entirely on this proposition. But if on examining the parts of this syllogism, we find its first branch, or what is termed by

logicians its *major*, untrue, it will scarcely be necessary to show that its conclusion cannot be relied on. Is it true, then, that every fact which legally can be proved by parol, can also be legally proved by the admissions of a party? The chief justice, who delivered the opinion of the court, while he will not positively affirm it to be an universal proposition, assumes it to be such for the purposes of his argument, at least says, he perceives no reason why it is not, and seems to recollect no cases that are exceptions to it. But if the learned judge had tasked his memory, well stored as it is with legal principles, he would have recollected many cases where facts capable of being proved by parol cannot be proved by the mere admission of a party, however direct or circumstantial his admission may be. I shall refer to a few only of these cases, but they will suffice to show that the proposition cannot be adopted as a general legal principle. One case is that of a deed produced to be proved in court, where, though its execution by the party is to be proved by the oath of witnesses, his admission that he did execute it will not be received so as to dispense with the necessity of calling the witnesses to establish by them the same fact. The case also of bigamy, where the fact of the first marriage cannot be established by the admission of the defendant, though it may be proved by parol. The same also of the marriage of the plaintiff in an action of *crim. con.* which the admission or declaration of the defendant is deemed insufficient to establish. The fact of adultery or of physical incapacity, though from its nature incapable of being proved otherwise than by parol, still cannot be established by the declaration or confessions of the party implicated. Another case is that of perjury, where proof equivalent to the testimony of two witnesses being necessary to establish the falsity of the matter sworn to, the declarations of the party that it was otherwise than he afterwards swore it to be, will not supply the required testimony of the second witness. Other cases could be adduced, but what have been already referred to, suffice to show, that it is by no means an absolute proposition that every fact which can be proved by parol can also be proved by the admissions of a party. But if there were no case whatever except the present one, it alone would be sufficient to show

that the rule was not universal, and this by a test which it seems to me admits of no dispute. It is a sound rule of logic, that a proposition cannot be true that necessarily involves a conclusion which confessedly is false. The proposition that the fact that land has been duly conveyed, can be established by proof of the declaration of a party that he had executed a deed, because the execution of such a deed might be proved by parol, necessarily involves the conclusion that the title to land can be conveyed from one to another, although no "deed or conveyance in writing, subscribed by the party," &c. shall have been in fact executed. This conclusion being in the very teeth of the statute of frauds, must be false ; and that it is necessarily involved in the proposition, can, I think, very easily be shown. A person owning land, from motives known only to himself, falsely asserts that he had lately before, executed a deed of the land to another, and to make the case stronger, let him add that the deed was lost, or had been accidentally or fraudulently destroyed ; under the proposition that proof of his admissions is equivalent to proof of the fact that such a deed was executed, he loses his land, or his children may lose their inheritance, or a subsequent *bona fide* purchaser who from some cause has been unable to get his deed recorded, loses his purchase money, or a mortgagee subsequent to such pretended deed is deprived of his supposed security, or like the present case, the purchaser under a judgment is defeated of his bargain. How vain and useless, and even mischievous is the statute of frauds, if its most important provisions can be thus circumvented !

But it is said that the statute of frauds does not change the character of evidence, but only the modes of conveyance ; and although the admission of a party, if made nakedly to the fact, that he had transferred his land to another, could not be received as evidence of the fact, yet his admission that he had executed a *deed* which had transferred the land to another may be received. In short, that the statute, while it forbids the end, allows all the means necessary and inevitable to produce the end ; it rejects proof to the whole, but does not exclude it to all the parts of the whole. This would be vio-

lating a foundation principle of ethics and of law, which forbids that to be done indirectly which is prohibited to be done directly; and after all, it is only restating the old proposition in a new and more sophisticated form; which proposition, however, it may be stated, labors under an incurable, though not unfrequent defect—that of assuming what it proposes to prove. It assumes that there was a deed, which is made the foundation for admitting the party's declarations and then by the declarations it proposes to prove the fact which alone entitled those declarations to be received. By this means the admission of a party is received, not merely to prove a fact, but to create it; thus making the admission equivalent, not, as is contended, to parol proof of a deed, but equivalent to the deed itself. The statute of frauds, for reasons of public policy, requires that to transfer the title of lands, there shall be a deed; the decision in this case requires that there shall be either a deed or testimony that the party had said that there had been a deed. The fatal objection to the decision is, that the statute does not recognize this alternative. The law will not accept the substitute.

But another difficulty is involved in the proposition which the judgment in this case has established: it is, that it necessarily carries the doctrine of proving facts by the admission of a party beyond its true principle. It assumes that every person who either is or has been interested against the facts proposed to be proved, is such a party as that his admissions, made when it would seem to be contrary to his interest to make them, shall be conclusive upon others, though he is in no respect a party to the suit in which his admissions are used. The proposition, therefore, is not merely that a fact which may be proved by parol, may be proved by the admissions of a party to the suit, but by combining with this principle a very loose doctrine, which from a sort of necessity has been tolerated for the purpose only of showing the character of a possession under which the party to the suit claims, we get established the broad principle that the legal rights of a party to a suit may be concluded by declarations made by any person, if at the time of making them they were apparently in contradiction of his own interest—no matter whether that interest is extin-

guished or entirely reversed at the time when these declarations are used. Such is the reasoning, or rather the result of the reasoning, and the effect of the authorities by which the proposition is sustained. Several of the cases relied on are where the person whose declarations are used had no interest in the suit ; and from this it follows that the declarations of a person who is himself a competent witness, may be an equivalent for his oath ; and thus the rule that the best evidence shall be given which the nature of the case admits of is annulled, and hearsay is substituted for testimony. Though I am entirely satisfied that Morris was a competent witness for the plaintiff in this suit, I do not propose to show it; for the principle on which the decision of the supreme court rests, must make his declarations, whilst he was in possession of the land, equally conclusive upon all claiming through him, whether he was or was not a competent witness on the trial of the suit ; and this circumstance, of itself, affords another striking proof of the error of the judgment we are reviewing.

Though I have consulted all the authorities referred to on the argument, and some others, it cannot be useful to array or comment upon them at large. Some cases, it is true, have gone far to relax the old rules as to the proofs of written instruments, and some others, if I may be allowed to say it, seem to have been decided without a full view to the great principle of public policy and individual security, intended to be protected by the statute of frauds ; but certainly no case can be found that intentionally goes so far as to establish, even by construction, that the title to lands can vest or be divested by parol. Those decisions that may seem to approximate to this conclusion, were produced by a disposition to preserve the original relations of parties in respect to lands, and to prevent their being changed by the lapse of time or the act of the law. It will be found that in all the original cases in which the confessions of a party were received, it was for the purpose of defeating a title set up by one in possession, and not to aid a title attempted to be established by one out of possession. The rule in this respect has no doubt been extended, and some cases may be found where it has been carried very far, but never so far as designedly to trench upon

ALBANY,
Dec. 1835.

Corbin
v.
Jackson.

the great principle that a man shall not be divested of his title by parol. There is a sound view of this principle contained in the opinion of the court in *Jackson* v. *Shearman*, 6 *Johns. R.* 21, thus expressed : " The acknowledgments of the party as to the title to real property, are generally a dangerous species of evidence ; and though good to support a tenancy, or to satisfy doubts in cases of possession, they ought not to be received as evidence of title. This would be to counteract the beneficial purposes of the statute of frauds ;" and even in the present case the supreme court recognizes it as a proposition not to be questioned, " that no man can be divested of his title to real estate by parol." But if there is in this case other proof than parol to establish the fact that Morris had divested himself of his original title to the premises, I am unable to find it. My opinion is, therefore, that the judgment of the supreme court should be reversed.

On the question being put, *Shall this judgment be reversed?* the members of the court voted as follows :

*In the affirmative*—Senators EDWARDS, LACY, LANSING, M'DOWELL, TRACY—5.

*In the negative*—The PRESIDENT of the Senate, the CHANCELLOR, and *Senators* ARMSTRONG, BEARDSLEY, BECKWITH, CROPSEY, DOWNING, EDMONDS, FISK, GANSEVOORT, HALSEY, LOOMIS, MAC DONALD, MACK, MAISON, VAN SCHAICK, WILLES—17.

Whereupon the judgment of the supreme court was AFFIRMED.