## Curry & a., Appellees, v. Rogers, Appellant.

To make a party liable for services rendered, or moneys advanced, they must be either expressly or impliedly authorized, or subsequently sanctioned by him.

Where R., the defendant, signed a subscription-paper, promising to pay $12 in lumber, towards the erection of a building to be used for literary purposes, and a portion of his co-signers subsequently held a meeting and chose the plaintiffs, neither of whom had signed said subscription-paper, a building committee, and they proceeded and expended money, and erected the building, but the defendant was not notified of the meeting, nor did he attend it, nor did he afterwards in any way recognize the appointment of the committee or their doings: *Held*, that there was no privity of contract between him and the committee, and that they could not maintain an action against R., either upon the subscription-paper, or upon a general count for money paid.

APPEAL, from the decision of a justice of the peace. The writ was dated April 24th, 1848, and contained four counts. The first was special, and alleged that the defendant, on the

21st of December, 1843, by a certain memorandum in writing, agreed to pay the plaintiffs $12, to be appropriated in the erection of a literary institution for the Methodist Episcopal Church, to be located within one fourth of a mile of Sanbornton Bridge by a committee consisting of Nathaniel S. Berry and others. It was also alleged that said sum of $12, was to be paid in lumber to be delivered on the place of location, on demand of a committee, consisting of James Cofran, John Taylor, and Benjamin Hill; and that the value of said lumber was to be appraised by said Cofran, Taylor, and Hill. And the plaintiffs averred that the institution was duly and seasonably located according to the terms of the memorandum, and the lumber duly demanded by said committee, and a refusal on the part of the defendant, to fulfil his engagement and promise.

The second and third counts were for $15, for so much money paid, laid out, and expended by the plaintiffs for the defendant, at his request; and for so much money had and received by the defendant, to and for the use of the plaintiffs.

The fourth was for $15, for lumber and building materials furnished by the plaintiffs for the defendant, at his request.

Plea, the general issue.

To sustain the action, the plaintiffs proved that the institution had been duly located by the committee named in the writ, that it had been built within one fourth of a mile of Sanbornton Bridge, and that the building of the same was commenced within one year from December 21st, 1843. They also introduced evidence tending to show that before the location and erection of the institution, subscription-papers were in circulation, some payable in cash, and some in lumber or labor. They further proved the loss of one on which was what purported to be the signature of the defendant. Said paper was dated December 21st, 1843, and was in the following words: "We, the subscribers, agree to pay the several sums set to our respective names, to be appropriated to the erection of a literary institution for the New Hampshire Annual Conference of the M. E. Church, to be located within one fourth of a mile from Sanbornton Bridge, by the following committee: Nathaniel S. Berry, of

Curry *v.* Rogers.

Hebron, William Parker, Esq., of Pembroke, Rev. N. W. Aspinwall, of Bristol, Rev. S. Chamberlain, of Concord, and Rev. R. Dearborn, of Sanbornton. We further agree to pay our subscriptions in lumber or work; the lumber to be delivered on the place of location, on demand, and the work, on demand from the committee, who are Colonel James Cofran, John Taylor, and Benjamin Hill. Said lumber and work to be appraised by said committee." On said lost paper were a number of names as donors, besides the defendant's; but the name of neither of the plaintiffs was upon it.

The plaintiffs further offered evidence, tending to show that there was a meeting of some of the subscribers to some of the papers, but how large, did not appear. That personal notice was given to some of the subscribers, and a written notice of the meeting was posted up in several places in and about Sanbornton Bridge village, the defendant at the time residing about two miles therefrom. The defendant was not present at this meeting, nor did it appear that the notice of the meeting was ever brought to his knowledge. At this meeting, the plaintiffs were chosen a building-committee, to go on and erect the building; and it appeared that they had done the same, and had expended an amount larger than all the subscriptions combined. There was no evidence, showing that the defendant ever attended any of the meetings of the subscribers, or ever had any notice to attend, or that he took any part in the erection of the building. It appeared that the subscribers generally settled with the building-committee.

To show further, that the defendant was holden as a subscriber to said paper, and that a demand had been made upon him for the lumber, the plaintiffs introduced one witness, who testified, that in the fall of 1843 he had a conversation with the defendant in regard to the subscriptions, and that the defendant told him he had made up his mind to give $12 in lumber, and said to the witness, "You may put me down twelve dollars, in lumber." But the witness did not affix the defendant's name to any of the papers, nor tell any of the building-committee to do it. Another witness testified, that some of the subscription-

papers were left at his office to enforce their collection, and among them, one with the defendant's name upon it; that he addressed a letter to the defendant, in the usual form of attorneys' letters; that he soon after saw the defendant, who inquired of him what demand the witness had against him; that he told him the Methodist folks wanted him to pay up his subscription. The defendant then asked the witness, if he had the papers. The witness told him that he had, and that there was one with his name upon it. The defendant said, he ought not to pay it, as it was the understanding that it was to be paid off the farm. The defendant further said, that they were dunning for money, and it was to be paid in lumber, any way. The witness told him, that the committee would take the lumber then. The defendant said, that might be, but he should not pay it; that he had moved away, and that it could not be proved that he signed the paper. On cross-examination, the witness testified that he could not say but that the defendant stated, at first, that he never signed the paper; that he did not remember whether he said he never signed it, or not.

The plaintiffs here closed their evidence, and the defendant moved for a nonsuit, for the following reasons: That there was no competent evidence to show that the defendant ever signed the subscription-paper, or that his name was ever affixed to the same, by any person authorized by him so to do. That if the evidence was competent to show that he was bound by the subscription, it did not appear that any demand had ever been made upon him, according to the terms of the paper; that no action could be maintained against the defendant, in favor of these plaintiffs, whatever might be his liability to others, inasmuch as it did not appear that he had ever, directly or indirectly, contracted with them, or that any thing had been done that would make him holden to them upon any of the counts in the writ.

The court sustained the motion for a nonsuit, and the plaintiffs moved to set the same aside, and for a new trial. The questions arising upon this motion were reserved and assigned to this Court, for their determination.

*Nesmith & Pike*, for the plaintiffs.

The first point of the defendant is, that no competent evidence was offered to show that he signed the subscription paper. We contend that there *was* evidence, to go to the jury, that the subscription-paper was signed, either by the defendant himself, or by some one authorized by him ; that such is the legitimate tendency of the evidence.

The defendant's second point is, that there was no demand made, according to the terms of the subscription-paper. We contend, that the letter of the attorney was a sufficient demand ; that the paper does not point out any one who shall make the demand for the lumber.

The defendant's third position is, that no action can be maintained by these plaintiffs, whatever his liability may be to others. Perhaps, upon the express promise in the subscription-paper, this action cannot be maintained ; but we think the terms of the paper do not show that lumber was to be paid, or delivered, to any one in particular. We contend, that the plaintiffs can recover on other counts in the declaration than the one on the special promise. Money advanced on the faith of subscription-papers, may be recovered by action for money paid. *Holmes* v. *Dana*, 12 Mass. 190; *Trustees of Farmington Academy* v. *Allen*, 14 Mass. 172; *Bryant* v. *Goodnow*, 5 Pick. 228. The case of *George* v. *Harris*, 4 N. H. Rep. 533, does not preclude the plaintiffs from maintaining this action.

*Cate & Rogers*, and *James Bell*, for defendant.

No action can be maintained on an implied contract, as an express one was made. The contract, if any, was made with the co-signers. It is similar to the Plymouth Court House case, and that is an authority in point. *George* v. *Harris*, 4 N. H. Rep. 533.

We still insist, that there was no evidence competent to show, either the execution of the paper by the defendant, or a legal demand upon him for payment. But one great point is, that there was no privity of contract shown between the plaintiffs and defendant. Two of the plaintiffs are stated as a part of the

committee to make the demand. That is the most that can be made out of it. If the action is maintainable at all, by any of the plaintiffs, it can be done only by these two. The cases to sustain us are numerous. Among them are *Willoughby* v. *Willoughby*, 5 N. H. Rep. 244; *Butterfield* v. *Hartshorn*, 7 N. H. Rep. 350; *Saunders* v. *Filley*, 12 Pick. 554; *Carter* v. *Gault*, 13 Pick. 531.

EASTMAN, J. The motion to set aside the nonsuit, ordered by the court in this case, raises three questions, which we will consider in their order. The first is, did the defendant sign the subscription-paper on which the special count in the writ is based? This paper is the foundation of all claim upon the defendant; and although he might be liable upon the other counts in the writ, under a state of facts which could readily be supposed, yet the essence of his liability depends, and would depend, upon his primary steps in making himself liable upon the subscription-paper. This paper, it appears, was lost; and before secondary evidence of its contents could be introduced its execution in some way must be proved.

The usual course to fix upon a party the execution of a lost instrument is, to show that it once had an existence, and that the party's genuine signature was upon it. It then becomes competent, on proving its loss, to show its contents. Where the instrument is a specialty and attested by witnesses, proof by those witnesses would be the ordinary mode of showing the signature of the party. Where the paper is a mere simple contract, the signature can oftentimes be shown by some one who chanced to see the party affix his name to it. But this, in many instances, cannot happen, because simple contracts, from their very nature, are frequently executed in the presence of the parties only, who, from their interest, would be excluded as witnesses. A party's oath can be received to show the loss of an instrument declared on; but its execution and contents must be proved by others. When, therefore, the execution of a lost paper is in dispute, it is oftentimes extremely difficult to show it, unless the party shall in some way acknowledge the

Curry *v.* Rogers.

signature, or do some act from which a legitimate inference may be drawn that he signed it. Where the execution is not particularly disputed, slight evidence that the paper once existed, is sufficient. The admissions of a party may be proved, to establish both its existence and contents. *Thomas* v. *Harding*, 8 Maine Rep. 417 ; *Corbin* v. *Jackson*, 14 Wend. 619 ; *Mauri* v. *Hefferman*, 13 Johns. 58, 74. But, whenever an instrument has been lost and its execution is disputed, it is incumbent upon a party to prove its existence as a *genuine instrument*, before secondary evidence of its contents can be introduced. *Kelsey* v. *Hanmer*, 18 Conn. Rep. 311 ; *Boskin* v. *Seechrist*, 6 Barr's (Penn.) Rep. 154 ; *Elmondorf* v. *Carmichael*, 3 Littell's (Ken.) Rep. 472 ; *Truby* v. *Byers*, 6 Barr, 347 ; *Kimball* v. *Morrell*, 4 Maine Rep. 368 ; *Jackson* v. *Frier*, 16 Johns. 194, 196. And in *Anderson* v. *Snow*, 8 Alabama Rep. 504, it was held, that the contents of articles of partnership could not be proved by a witness who had seen the paper with the party's name upon it, but did not know that the signature was genuine. Excluding the conversation of the defendant with the two witnesses who testified, the evidence in the present case would. be parallel with that in *Anderson* v. *Snow*. It would be, simply, that a subscription-paper once existed, with a name upon it purporting to be that of the defendant. This paper being disputed, must be proved by some competent evidence to have been signed or assented to, before it could be considered by the jury. Does the testimony of the witnesses aid the matter ? If the witness, to whom the defendant said, "You may put me down $12, in lumber," had affixed the defendant's signature to the paper, that would have been sufficient. Being merely a simple, parol contract, verbal authority and directions to sign the paper were enough. The witness, however, did not affix the defendant's name to any of the papers, nor did he authorize any of the building-committee to do it. Nor would it avail any thing, had the witness instructed them so to do, and they had followed his instructions, for his authority extended to no power of substitution ; and any act done by them, by his direction, would be a mere nullity, so far as the defendant could be made

21 *

chargeable thereby. By this witness, then, nothing is shown that could be competent for the consideration of a jury.

The testimony of the other witness is more doubtful. From a part of his statements, there would seem to be an admission by the defendant, of liability upon the subscription-paper, arising either from an actual or authorized execution of the same. But when the whole is taken together, it being all one conversation, and he alleging that he should not pay it, and that it could not be proved that he signed the paper, it is by no means certain that any thing can be extracted from the testimony which would be competent to base a verdict upon.

But we will pass to the consideration of the second point in the case; which is, that no demand was made upon the defendant according to the terms of the subscription. The only demand proved, is the one by the attorney into whose hands the papers had been put for the purpose of collection. Assuming that the defendant's name was legally upon the paper for $12, payable in *lumber*, this demand would probably be sufficient, provided there was nothing in the terms of the subscription-paper requiring a different demand to be made. The words of the paper are, "the lumber to be delivered on the place of location, on demand, and the work on demand from the committee, who are Colonel James Cofran, John Taylor, and Benjamin Hill." A *demand* is to be made both for the labor and lumber. That this is to be done by the committee, for the labor, is conceded; but the distinction is taken in the argument, that while agents are agreed upon to make the demand for the labor, that for the lumber is left indefinite. It is difficult to perceive any thing in the reason of the transaction or the situation of the business, that would lead the projectors of the enterprise, or the subscribers to the papers, to adopt a different course in making the demand. So far as we can discover, it was quite as necessary to have suitable and judicious men to make a demand for the lumber, as for the labor. Both would naturally be required more or less together, and it would be no forced construction of the terms of the paper, to hold, that the demand in both instances was to be made by the committee designated. Such, in fact, we think was the

intention of the parties, and such but a fair and legitimate conclusion from the words expressed. But, whatever might be our conclusions in regard to these points, even should we hold that there was evidence here which might have been submitted to the jury as competent, from which they could find, not only that the defendant signed the subscription-paper or authorized his signature to be affixed thereto, but also that a proper and sufficient demand was made upon him, still, an examination of the *third* point places the matter beyond doubt. A difficulty arises here, which, upon the facts presented, cannot be obviated. There is no privity of contract between the parties to the suit, and nothing shown which can place them in the relation of debtor and creditor. If the defendant can be holden at all, in this action, it must be upon the general counts. The evidence cannot sustain the special count upon the subscription-paper. The contract by that paper was with the co-signors, and not with the plaintiffs. That others signed the paper with him, is a sufficient consideration to raise a promise to pay according to the special agreement; and that consideration may be so transferred by the action of the defendant as to bind him to others for money paid. Unless some action were taken by the defendant, binding upon him, whereby he became obligated to others for the purposes of carrying out the designs of the subscribers to the paper, he could be holden to the subscribers only. His contract was with them; not with others. This committee, the plaintiffs in this action, were appointed at a meeting of some of the subscribers. There is no provision in the paper for any such meeting; but upon those who saw fit to attend it, and who took part in its proceedings, the appointment of the committee may be binding. It may be regarded as a subsequent arrangement and agreement among themselves, to abide by and carry out their doings. Upon such, the plaintiffs should have a good claim. They were, in fact, employed by them to proceed and erect the building; and we can discover no good reason why they should not have a legal cause of action, upon a count for money paid, for all sums properly expended in furtherance of the object and designs of the donors. Upon those, also, who

did not attend the meeting at which the plaintiffs were appointed, but who subsequently assented to its doings and agreed to the expenditure of the money by the committee, the plaintiffs should have a claim. Upon those, too, who recognized the proceedings of the plaintiffs and ratified their doings, there may likewise be a cause of action. But this defendant stands not in the light of either. He was not notified to attend the meeting at which the plaintiffs were appointed. He neither attended that nor any other meeting ; nor did he consent to, or ratify its doings, or in any way recognize his liability thereafter. We can discover no privity of contract whatever between him and the building-committee. There were no dealings or transactions of any kind between them. His contract, if any, was with his co-signors. *George* v. *Harris*, 4 N. H. Rep. 533. And, upon the facts presented here, it is they alone that can maintain an action, if it can be maintained at all.

The cases cited in the argument are based upon a different state of facts, and do not sustain the, plaintiffs in this suit. *Holmes* v. *Dana*, 12 Mass. 190, was a subscription to a newspaper establishment ; and the plaintiff's intestate, Larkin, was, by the express terms of the subscription, made the trustee to receive and appropriate the money. *Trustees of Farmington Academy* v. *Allen*, 14 Mass. 172, was a subscription to raise funds for the establishment of an academy, "payable to such persons as shall, or may be, by the legislature, appointed trustees." The plaintiffs were subsequently made such trustees by the legislature, as was provided in the paper. *Bryant* v. *Goodnow*, 5 Pick. 228, was a subscription to establish a line of stages. The paper provided that there should be a meeting of the stockholders, for the purpose of making such arrangements, obligations, and officers, as might be necessary to carry into effect the objects proposed. A meeting was accordingly held, and the plaintiff, Bryant, chosen agent of the company, and authorized to expend money to purchase horses, coaches, and other necessary things connected with the business of the company. In each of these cases, there was something upon which to base either an express or implied promise from the defendants to the

plaintiffs. In the first, Larkin was the person to whom the money was to be paid by the terms of the paper; and in the second and third, the way was pointed out in the papers, by which the plaintiffs should become the payees of the subscribers. In the last case it is also indirectly held, that the defendant was entitled to notice of the meeting at which the agent was appointed; and so far, that case is an authority for the defendant here; for no notice whatever, of the meeting at which the plaintiffs were appointed, was ever brought home to this defendant.

The general principle, that in an action of assumpsit there must be either an express or an implied promise from one party to the other; that there must be privity of contract of some kind between them, is believed to hold good in all instances. It is not sufficient that moneys are advanced, or services rendered for a party, to make him liable therefor. They must have been authorized, either expressly or impliedly, or must have been subsequently sanctioned by him. There must be something, out of which an undertaking can be raised: some privity must exist between them. *Rensselaer Glass Factory* v. *Reid,* 5 Cowen, 603; *Carter* v. *Gault,* 13 Pick. 531; *Butterfield* v. *Hartshorn,* 7 N. H. Rep. 350.

The conclusions, therefore, to which the Court have arrived, are, that upon the facts presented in the case before us, the action cannot be maintained, that the motion for a nonsuit must be overruled, and that there must be

*Judgment on the nonsuit.*